19-3207 from the District of Nebraska, United States v. Cyrus Free Ms. Hanson, we'll hear from you first. Thank you, Your Honor. May it please the Court, I'm Julie Hanson. I'm a Federal Public Defender, Assistant Federal Public Defender with the District of Nebraska. I represent the appellant Cyrus Free. And like the last group, I express my appreciation for you to continue hearing cases under these circumstances. Your Honors, this is an appeal from a jury trial in which Mr. Free was found guilty of aggravated sexual abuse of a minor. He was sentenced to life imprisonment. On appeal, Mr. Free assigns as error the District Court's decision to exclude evidence which supported his defense. Appellant sought to introduce reverse 404B evidence. To prevail, appellant must convince this Court that the District Court abused its discretion by excluding the testimony from the accuser which showed that she had motive to manufacture a story in order to remove Mr. Free's ability to participate in parenting decisions. Specifically, the accuser, we believe, had a motive to lie about Mr. Free in order to attend a once-in-a-lifetime free all-expenses trip paid with her friends of those, including her boyfriend, to Washington, D.C. with a small group of friends. We believe that in this particular case, the evidence that was not allowed to be introduced supported his defense of that motive. Evidence of prior bad acts may be admissible for other purposes than propensity, such as proving motive, plan, knowledge, intent, absence of mistake, or lack of accident. Here, the evidence is directly related to motive. The defense did not attempt to introduce this evidence to paint the alleged victim as a bad child or as a drug user. Instead, what we sought to do is provide the jury with a reasonable explanation for her own behavior, meaning the accusation. Although the trial judge admitted during sidebars that he believed that the evidence would, in fact, support our theory of the defense, he eventually limited our ability to inquire regarding the teen's prior 404 or bad acts because, in his estimation, whether she had tested positive for use of marijuana was excludable because it was character evidence. Defense counsel argued at sidebar that we weren't seeking character evidence, but it appeared as if there was a conflagration of the rape shield statute and, at the same time, the argument that our ability to admit character evidence What precisely were you trying to accomplish here? Were you trying to argue that because she was a drug user, her credibility was flawed, or were you trying to argue that because she was disciplined by the defendant, she was biased against him or something else? Judge, in the transcript and at trial, the government introduced evidence suggesting that in the week before this trip, this Washington, D.C. trip and accusation of Mr. Freeh, that there was a meeting of the parents and, in this case, Mr. Freeh and his significant others. Mr. Freeh's mother stood in the shoes of the parents. They were her guardians, and they attended this meeting at the school. During that meeting, the trip was discussed, and after the meeting was over, there were some forms that had to be filled out by the parents to give consent for them to go and to acknowledge other things and provide information for the school. During that meeting, the witness, who was a paraeducator at the school, testified that she noticed that the accuser in this case was sad, appeared to be sad, and it appeared at some level to connect with Mr. Freeh. After that meeting was over, and as the participants of the meeting were exiting, she actually asked the accuser in this case if she was all right, and the accuser seemed to shrug her shoulders and indicate that she was all right. Now, that testimony came in. It was elicited by the government, and the explanation was left to the jury, I think, to provide why she was sad. It's our position, Your Honor, that she was sad because she feared that, and it was specific to that meeting, because she feared that, in fact, as part of her punishment for using, that she would not get to go on that trip. Why couldn't you just ask her, in cross-examination, isn't it true that you were sad at that meeting because you believed that Freeh was going to punish you for misconduct and forbid you from going to D.C.? You could have done all that without bringing up drug use. Why wouldn't that have been sufficient? Well, I think, as a parent of a teenager, and I think that the panel probably has some parents on it, and of course the jury had parents on it, there's typical teenage misbehavior, and we had elicited evidence relating that typical teenage misbehavior. And the evidence from the accuser in this case was that she got grounded or loss of phone, but she indicated it was typical punishments. Our purpose was that this was not typical teen behavior, not that she was a drug user. Our purpose was that this wasn't going to be a punishment like it had been in the past, and that, in fact, this sort of behavior would have resulted in an enhanced punishment, and that's what she was afraid of. But my question still remains, why couldn't you elicit her acknowledgement about the punishment, or fear of the punishment, without bringing up the drug use that the judge didn't want to have come in? Well, and I stick with my answer. The purpose is because drug use is an elevated, an activity where the necessity for intervention and higher levels of punishment is necessitated by that kind of behavior. If you're going out late at night, or going to see friends when you don't have permission, or you miss a school homework assignment, those are not elevated types of punishments that would be a response to the sort of behavior. So once again, looking at Reverse 404B, this court, the Eighth Circuit, doesn't have a direct on-point case relating to non-offender Rule 404B evidence where the 404B evidence is offered against somebody that's not that other guy did it. Because what the Eighth Circuit has ruled on in the past is cases where the other guy did it. And it's our position that where this isn't like battle, where in battle there was going to be this mini trial, actually it wasn't going to be a mini trial, it was going to be several mini trials relating to the other person who possibly would have done this, or committed the offense in battle. And the court in that case said that the time it would have taken to go through all of those mini trials would have been overburdensome to the court, and wouldn't really have potentially even been admissible because there was no witness to get it in. And in this case, this case involves a question about why this particular time frame, the seven to ten day time frame right before the allegation, and the couple of days right after the allegation, why that was important. Because in this particular case, that time frame is the time frame of getting into trouble with her grandparents, that trouble was of a nature that deserved an enhanced punishment, the fear of the enhanced punishment was the motivating factor to making up a story, and I would point you again to the past record of this family is there's multiple interventions by CPS. One intervention included her younger brother making an allegation against Mr. Free for spanking him, and then that allegation expanded to be other people in the household, including a sibling spanking him. He was removed. If I may, let me ask you about this. The other side really said that the judge said to defense, go into the reasons why she had been in trouble then, feel free to argue that, feel free to get evidence on that, and then the government says that wasn't really the pursuit on cross-examination, they imply it all. What will the record really show? Well, the record shows that it made several attempts. First of all, I did go into other behaviors that ended up in punishments, but the record also shows that I on several occasions tried to elicit the fact that there was a positive test, not whether or not she was a drug user, whether or not she was frequently a drug user, but the speculation was that this was a character evidence issue, and it was not a character evidence issue. The evidence was not, it didn't go to whether or not she was a drug user, it went to whether or not she had a motive sufficient to blame him for something serious and get him out of her life, because her brother's allegation got them out of her life. And in fact, when her brother made the allegation, it ended with all of the children being removed from the household except for her. It was a year before her allegation, and she testified that she refused to go live with her mother because she wanted to live with the Freaks. That was her decision. She made that decision. So in my mind, I want to know, well, why all of a sudden after you chose, a year prior to this, you chose to go back and live with the Freaks, even though you had been removed, what has changed? What has changed between that and getting punished for everyday normal kid things, which is what she testified to, between that and this allegation, she packed her bags the day she made the allegation for this trip. She packed her bags, brought those bags to school the next day, so that when the paraeducator and the counselor picked her up and got her bags, she was already packed. So before the school had intervened, before CPS had intervened, before anybody had intervened, she had already gotten ready to go on her Washington, D.C. trip. She never saw the Freaks again after that. So my point is that because this is not character evidence, the court has to then go to waive 401 versus 403 evidence. And it's our position that motive is clearly at issue, motive why she would make up this story. And it's not character evidence, it's not propensity evidence, it's whether or not she had a motive to tell this story. Did she have a motive to go into great detail about the different forms of sexual conduct, including vaginal, anal, oral, digital? Thank you for the question. In that little detail? Those details did not come into her allegations until right at trial. She never told those details to any of the interviewing people when she made the accusation. Two years later, right before trial, she made those sorts of statements. And she made no comments to her school or her classmates or anything like that? No, she did not level the specificity that you have detailed in your questions. For example, she never mentioned anal sex. In fact, she rejected that in her questionnaire. For example, she changed her story from this happened maybe once or twice a month. At trial, she testified that it happened every day or every other day. At trial, she testified to anal sex. When she made a report, she did not disclose. In fact, the evidence, the records from the examination indicate that she denied anal sex. At trial, she described in graphic detail statements he allegedly made. Things like pop your cherry and, for example, your example of anal sex. Those things never were mentioned at any time except for at trial. I see that I've run out of time. If there's no more questions, I guess I'm finished. Thank you, Your Honors. Very well. Hearing no questions, we thank you for your argument. And we'll hear from Ms. Wright. Good afternoon, Your Honors. May it please the Court and Ms. Hanson. This court should affirm Fried's conviction as well as the sentence in this case. I'm going to spend a significant amount of time focusing on the 404B evidence, and I think that is what Your Honors are also interested in based on some of the questions that were presented to Ms. Hanson. But just in summary, the district court did properly exclude the 404B evidence. The evidence in this case was sufficient to support his conviction for the aggravated sexual abuse of a child. The sentence in this case was not only reasonable, but it was also mandated. And with respect to the claim of ineffective assistance of counsel, that is premature at this point. So moving to the 404B evidence. This is reverse 404B, essentially. And there are four factors that the court needs to consider in whether or not to admit that evidence. Whether or not this victim had a particular motive to lie about sexual abuse is certainly something that Mr. Fried was responsible for. And she was not prevented from doing so during the trial. What was prevented was the specific instance of misconduct relating to this drug test. And even in Ms. Hanson's argument today, she had made clear without even referencing the drug test multiple times that she could get into whether or not this child was in trouble for something, something severe enough that it would demand a higher level or elevated punishment, which would then give her a reason to want to fabricate a story and get rid of Mr. Fried. She doesn't have to get into it at all, but that involved a drug test. That specific instance is something that's not required to still make the argument that she made not only just to your honors now, but also at the trial. That same argument was made. She was free to explore with the victim in this case what kinds of things she got in trouble for, and she asked that question. And when the response was simple things that a teenager would get into trouble for, then she essentially moved on and went with another line of questioning. Now, the district court judge, in analyzing whether or not to admit the drug itself, although he didn't explicitly state it by saying, okay, I don't think this meets the preponderance standard, I think it's clear based on the factors whether it's relevant to a material issue, if it's similar in kind and close in time, if there is a preponderance, and then you get to the balancing test. Based on how it came out at sidebar, the district court judge essentially was concerned with the preponderance issue, and I understand that Ms. Tanton has said whether or not the drug test was accurate or whether its results were truly, whether those results, it really didn't matter what they were, but it does matter, because if that question is going to be lodged, didn't you test positive for marijuana, well, then it's reasonable to explore, okay, well, how? How do we know that? And that would create a mini trial. And at that point, when the district court judge said, well, how are we going to lay foundation for this anyway? And the response was, I suppose it was sent in, and it was, oh, I believe it was one of those over-the-counter drug tests. At that point, the district court judge says, no, I'm not going to let that in, because it fails to meet a preponderance standard. So I understand the argument that if we have a motive or we have a theory of this defense that there is a motive here, we should be able to explore that. Ms. Hanson was certainly able to do that at the trial stage. So in looking at the decision of the district court judge, which we are reviewing here with an abuse of discretion, he did properly exclude that evidence. And one of the things that I would like your honors to consider is there was an abundance of evidence in this case, and I think that goes in part to some of why this theory wasn't explored a little bit more, whether it was the victim or with the grandmother as well who testified. And I think that's because the documentary evidence, the forensic evidence, and the testimony of the victim in this case was very detailed. The documentary evidence included letters that Free had written to this child that essentially were somewhat like love letters, and then we had the DNA evidence on top of it all. Now, that gets me to discussing a little bit of the sufficiency of the evidence with respect to the conviction on count one for the aggravated sexual abuse of a minor. In this case, we could look at the testimony of the victim alone and find that there was sufficient evidence. When the result and the reported abuse had ended two years prior, she detailed for this jury the abuse that she suffered from the age of eight all the way up until just prior to her telling a friend about it at the age of 14. It's not as though she was a 30- or 40-year-old woman who was detailing events from decades previous. This was detailing events that she had lived with for a significant period of her childhood. She testified in detail that from about the age of eight is when Mr. Free started engaging in sexual acts with her. The jury heard the definition of a sexual act, which is the penetration of the female genital opening. They had a diagram, and they were able to see clearly which portions of the female anatomy were involved, and they found, after listening to her testimony, to include whatever inconsistencies were explored on cross-examination, that she was a credible witness. As I indicated in my brief, it is for the jury to resolve conflicting evidence and make credibility determinations, and those determinations are virtually unreviewable on appeal. This victim, having testified about Free touching her clit, trying to pop her cherry, attempting to have sexual intercourse with her, all of that would satisfy a sexual act of a child under the age of 12. In addition to her testimony, you also do have the physical evidence, as well as, like I mentioned before, some of that documentary evidence, and while those pieces, certainly the condom, for example, do not necessarily... But what it does do is it corroborates and lends credibility to the remainder of her story with respect to this abuse starting under the age of 12. So there certainly was sufficient evidence in support of that conviction. We would ask the court to affirm and uphold that conviction. And then getting to the sentence... One question on the conviction before you go to the sentence. We're talking about count one, is that right? Yes, Your Honor. Because count two was vacated on the view that it might be duplicative? A lesser included, yes, Your Honor. So if I read the jury instructions right, count one involved an allegation of digital penetration. Is that right? That is correct. So there would have to be sufficient evidence of digital penetration, not of other sex acts. That is true, Your Honor. And in this case, she did detail that one of the very first times in which Mr. Free came into the room was the digital penetration involving touching of what she called her clit. Okay. You may proceed to the sentence if you... All right. Yes, thank you, Your Honor. In looking at the sentence in this case, it's the government's position that, one, it's presumptively reasonable and that Your Honor can treat it as such, especially in light of the fact that this is a guideline sentence. The district court judge addressed all of the 3553A factors. We had an extensive sentencing hearing in which the district court judge listened in part to all of the arguments made by both the defense counsel and the deputy counsel. This is a plea, essentially, for a term of years. And after listening to everything and reviewing the pre-sentence investigation report and looking at Mr. Free's history, the district court judge said, if anything, my decision is made even more clear that a guideline sentence is appropriate in this case. Mr. Free's history included a conviction at the age of 19 for indecent liberties with a child, and it's the government's position that that prior conviction would actually make it such that a life sentence was mandatory under 3559E. So looking at the district court's decision to sentence him to life with an abuse of discretion, and then also in looking at the 3559E, it appears that his sentence was not only reasonable but also mandated. And so this court should also uphold the sentence in that case. And unless your honors would like me to get into anything with respect to the ineffective assistance claim, I would leave it at what I stated previously, that it is premature to bring up at this point. So the judge didn't say it was a mandatory life, did he? He did not. And also, your honor, the pre-sentence investigation, that's also something that did not come up during the sentencing. It was afterward, in looking at this case and preparing it, that I'm not sure if it's something we all overlooked, but in looking at 3559E and trying to see if there was some reason that it does not apply, I could not. In looking at the conviction that Mr. Free had from 1988 and the Kansas statute under which he was convicted under, as I stated in my brief, that would qualify as a prior sex offense as defined in 3559E. But no, your honor, it was not something that was discussed during the sentencing proceedings or in the PSR. How crucial was the testimony or evidence regarding the pre-12 years of age conduct? How crucial was it, your honor? How crucial was it to you? Well, obviously it would be crucial on that element of the year. Absolutely, correct, yes. During the trial phase, I was trial counsel in that case, and the government was very careful to explore with the victim conduct that happened prior to the age of 12, knowing full well that it's an element that my jury has to feel completely comfortable with. In doing so, we explored things like where she was living, what the setup in the house was like, the bedrooms, things of that nature. In addition to that, we also spoke with and called the grandmother, who was the defendant's longtime live-in, kind of like a common-law wife, who testified that Mr. Free would sleep in this child's room on a frequent basis in the same bed and had also gone into the bedroom and found the victim on her knees at Mr. Free's waist on one occasion. So there were instances such as that which were also corroborated. The victim testified with respect to her grandmother walking in. I do want to address, I see I have a couple of minutes left, unless there are any other specific questions, I would like to just briefly address. Ms. Hansen has mentioned that some of the details about the assault did not come forth until two years after she told her friends about it. And I would guess that your honors have seen child sexual abuse in the way that disclosures have. It's not a one-time event. In preparing this child for trial at the age of 16, it's a little bit different than the first time she's discussing this with a friend at school or with a forensic interviewer. And it took quite a bit of effort to prepare her for that and to explain that she would have to talk in detail about the events that happened to her during her childhood. And in order to do so, she was asked to write some of that down if it would be easier for her. And in doing so, that is where some of the details and things that happened for the years of abuse that she recalled details that were shocking and appalling, no doubt, but that I was able to explore with her during the actual trial itself. Was your preparation talked about in the trial transcript record? It was, yes, your honor. It was explored by Ms. Hansen with respect. I think it may have been a sidebar. I just want to know if it was in the record, what you were telling us. Thank you, your honor. And so I just felt that the government had to address the sort of insinuation that some of this was concocted and that the government was able to assist her in a grand theory that he assaulted her and had done so for years and all the pieces just magically fell together with respect to the condom, the love letters, and everything else, just so she could avoid missing this trip to D.C. And it's also worth mentioning that that trip to D.C., she was in an honors program in her school, taking college courses, and from what came out during the trial, she was actually a very good student and well-behaved child. So I see my time is running out here, and I would just ask that this court affirm the conviction and sentence in this case. Thank you, your honor. Thank you for your argument, Ms. Wright. Ms. Hanson, are you still with us? We've lost your picture. Now we see you again. I believe your time had expired, but if you'd care to make brief rebuttal, I'll give you a couple minutes. Once again, your honor, I'd refer you to the fact that when a jury weighs whose story to believe really in any trial, it's important to have the background not only to lay the foundation for the jury to understand what was happening in the lives of the parties prior to actually the event happening, but it's also important to understand the consequences of making certain decisions. And not only in our case did we have a situation where the jury didn't understand the full story of what was going on at the time that the allegation was made, but they also were not able to weigh the credibility of the accuser relating to whether or not her story that she was telling on the stand comported with the story that she told when she made the accusation. And when you have that difference, the difference between her story at the time of the accusation and the difference in the story two years later, then the issue becomes what's the motive essentially to lie? And where... Which I guess in your case would have been retaliation. Absolutely. She had been through, lived through a situation where she had been allegedly removed from the home, but went right back and there was no consequences to any of the family relating to the allegation that her brother made, except for a short period of time she stayed with her mother and the rest of her family. Then she went immediately back home. Which was the home that was with her grandmother? Correct, her grandmother and my client. And that was her decision. She testified that she knew that she was not supposed to live there, but in fact she chose to live there by herself. And I guess I don't have any more time. Thank you. Unless there are further questions from my colleagues. None from me, thank you. Thank you. Very well. Well, then thank you to both counsel for appearing in this format. The case is now submitted. The court will file an opinion in due course. That concludes the argument session for.